UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
NYGARD INTERNATIONAL PARTNERSHIP : Civil Action No. 13-02054 (AKH)
and NYGARD INC. : (HBP)
:
Plaintiffs, :
  - against - :
:
LORN BOLTON, :
:
Defendant. :
:
------------------------------------------------------------x
------------------------------------------------------------x
:
NYGARD INTERNATIONAL PARTNERSHIP : Civil Action No. 13-06411 (RJS)
and NYGARD INC. : (MHD)
:
Plaintiffs, :
  - against - :
:
MIKE FAYLES, :
:
Defendant. :
:
------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT
AND TO COMPEL DISCOVERY**

Dated: New York, New York
       October 15, 2014

SEYFARTH SHAW LLP

620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Plaintiffs
Nygard International Partnership and Nygard Inc.

## Table of Contents

Page

ARGUMENT ........................................................................................................................... 1

    I.      NYGARD SHOULD BE GRANTED LEAVE TO AMEND THE
COMPLAINT .................................................................................................. 1

          A.    Nygard Did Not Unduly Delay In Seeking This Amendment ........................ 4

          B.    Nygard's Diligence Enabled It To Timely Discover the March 17, 2012
Email ................................................................................................................. 5

          C.    Amending The Complaint Will Not Prejudice Defendants ............................ 7

          D.    Defendants Concede That Nygard Has A Proper Cause of Action
For Breach Of Fiduciary Duty And Duty Of Loyalty ..................................... 8

    II.     DEFENDANTS SHOULD BE COMPELLED TO PRODUCE
RELEVANT, NON-PRIVILEGED DOCUMENTS FROM THEIR PECC
EMAIL ACCOUNTS AND PERSONAL EMAIL ACCOUNTS. .......................... 9

CONCLUSION ........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Condit v. Dunne*,
  225 F.R.D. 100 (S.D.N.Y. 2004) ..................................................................................................11

*Enzymotec Ltd. v. NBTY, Inc.*,
  754 F. Supp.2d 527 (E.D.N.Y. 2010) ............................................................................................6

*Foman v. Davis*,
  371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)....................................................................3

*Freiger v. Iral Jewelry, Ltd.*,
  41 N.Y.2d 928 (1977) ...................................................................................................................9

*Grochowski v. Phoenix Construction*,
  318 F.3d 80 (2d Cir. 2003)............................................................................................................4

*Lamothe v. Town Of Oyster Bay*,
  08-cv-2078, 2011 U.S.Dist. LEXIS 120843 (E.D.N.Y. Oct. 19, 2011) ......................................4

*Mal Dunn Assoc. v. Kranjac*,
  145 A.D.2d 472 (2d Dep't 1998) ..................................................................................................9

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000).........................................................................................................4

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*,
  889 F.Supp.2d 453 (S.D.N.Y. 2012).............................................................................................4

*Permatex, Inc. v. Loctite Corp.*,
  2004 U.S. Dist. LEXIS 10953 (S.D.N.Y. June 17, 2004) ............................................................5

*Scott v. Chipotle Mexican Grill, Inc.*,
  300 F.R.D.193 (S.D.N.Y. 2014) ...................................................................................................6

*Simon v. City of New York*,
  09-cv--1302, 2011 U.S. Dist. LEXIS 9515 (E.D.N.Y. Jan. 3, 2011).........................................4

*Williams v. Woodhull Med. and Mental Health Ctr.*,
  10-cv-1429, 2012 U.S. Dist. LEXIS 21645 (E.D.N.Y. Jan. 31, 2012) .......................................4


**OTHER AUTHORITIES**

Fed. R. Civ. P. 15 ................................................................................................................2

Fed. R. Civ. P. 16 ................................................................................................................2

Fed. R. Civ. P. 26(b) .........................................................................................................11

**PRELIMINARY STATEMENT**

Plaintiffs Nygard International Partnership and Nygard Inc. (together, "Nygard"), by and through their attorneys, Seyfarth Shaw LLP, respectfully submit this memorandum of law in further support of their motion for leave to amend the Complaint against defendant Lorn Bolton ("Bolton"), and to compel discovery from Defendants Bolton and Mike Fayles ("Fayles" and together with Bolton, the "Defendants").

Defendants' opposition papers confirm, despite Defendants' distortion of the governing law and factual record, and focus on irrelevant discovery issues, that Nygard has established a clear entitlement to amend the Complaint. Defendants concede that Nygard has properly stated a cause of action for breach of fiduciary duty and duty of loyalty based upon the newly discovered (and now admitted) fact that Bolton was simultaneously employed by a direct competitor of Nygard months before he resigned from Nygard. Defendants make this concession notwithstanding their admitted attempt to obscure Bolton's misconduct by refusing for a year and half, and continuing to refuse, to produce any documents dated prior to his resignation. Defendants' opposition makes clear that there has been no delay or prejudice in bringing the claim; leave to amend is accordingly appropriate.

Defendants' opposition papers also confirm that Nygard's motion to compel should be granted. Despite their attempts to distort the nature and scope of Nygard's discovery requests, these requests are clearly related to the claims for relief already stated in the existing Complaint, and Defendants have no basis upon which to refuse production.

**ARGUMENT**

**I.  NYGARD SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT.**

In its opening papers, Nygard established that it is entitled to amend the Complaint. *See, e.g.*, Plaintiffs' Opening Brief, at 3-5. Nygard is entitled to amend pursuant to both the liberal

standard of Fed. R. Civ. P. 15, which permits a party to amend its pleading before trial "when justice so requires," and the "good cause" standard of Fed. R. Civ. P. 16. Nygard's opening papers demonstrate a clear cause of action against defendant Bolton for breach of fiduciary duty, based upon the recently discovered March 17, 2012 email, which irrefutably shows that Bolton was simultaneously working with Pure Elements Clothing Company ("PECC"), a direct competitor of Nygard, while he was still employed by Nygard, a fact now conceded by Defendants, and soliciting a prospective Nygard customer on PECC's behalf. *See* Declaration of James S. Yu, dated Sept. 24, 2014, Ex. 1. Nygard further established that there has been no undue delay, bad faith, or prejudice to Defendants, given that Nygard only just discovered the document days before filing the instant motion, notwithstanding the lack of any relevant discovery from Defendants.

In their opposition papers, Defendants concede that Nygard properly states a claim for breach of fiduciary duty against Bolton. Defendants do not contest that Nygard only recently discovered the March 17, 2012 email upon which the proposed amendment is based. *See, e.g.*, Defendants' Opposition Brief, at 7. Defendants further admit, notwithstanding multiple meet and confers, that they have purposefully avoided disclosing the facts that would support such a claim by unilaterally imposing a date restriction; refusing without basis to produce any discovery regarding any communications that occurred prior to Defendants' respective departure dates from Nygard, despite Nygard's requests for all pre-departure communications with PECC, among other relevant parties. *See, e.g.*, *id.* at 5-6. Ironically, despite Defendants' date restriction, Defendants' proposed discovery searches requested documents dating back to September 2011, nearly a year before Bolton's resignation and months before Fayles was terminated. Finally, Defendants do not contest that the governing legal standard on a motion for

2

leave to amend as set forth by the U.S. Supreme Court is that leave should be "freely given" in the absence of undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice or futility of amendment. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).[1]

Defendants nevertheless largely argue in their opposition papers that Nygard somehow should have learned of this claim against Bolton at some undefined time after March 17, 2012 when the email was inadvertently sent to a then defunct email address of a former Nygard employee who had already left weeks earlier (and was therefore buried amongst hundreds of thousands of other emails archived in Nygard's servers). *See, e.g.*, Defendants' Opposition Brief, at 9-10. Defendants further contend that they will be prejudiced by the amendment, despite their admitted refusal for over a year and a half to produce any of Bolton's emails dated prior to his resignation from Nygard, knowing that such emails would amply reveal Bolton's breach. Finally, Defendants argue that the proposed amendment would be futile based upon the bizarre proposition that Bolton's surreptitious employment with PECC, while he was still employed with Nygard, is somehow permissible under New York law. *See, e.g.*, *id.* at 12.

None of Defendants' arguments withstand scrutiny.

---

[1] Defendants premise their opposition upon the standard set forth in Federal Rule of Civil Procedure 16, which requires a showing of good cause to modify a scheduling order setting forth a deadline to amend the pleadings. (Opposition Brief at 8-9.) However, the Court's August 30, 2013 Scheduling Order states "[a]mended pleadings may be filed without leave of the Court under October 1, 2013." Nygard is not seeking to modify the Court's Scheduling Order as there was never a Court order establishing a deadline for motions for leave to amend. Regardless, as set forth herein, Nygard has established good cause to amend the complaint as there is no basis for Defendants to argue that Nygard knew or should have known of the basis for the amendment prior to October 1, 2013.

3

### A.     Nygard Did Not Unduly Delay In Seeking This Amendment.

First, Nygard did not delay in seeking amendment. Defendants concede that Nygard immediately alerted Defendants of the March 17, 2012 email promptly upon its discovery, that Nygard forewarned Defendants that it would seek leave to amend, and that Nygard brought this motion one week later. *See* Fuchs Decl. ¶ 28, and Exhibit K, thereto.[2] Accordingly none of the cases relied upon by Defendants regarding a delay by the moving party as a basis to deny leave are applicable to the case at bar because in each of those cases the movant had full knowledge of the basis for the proposed amendment for months if not longer prior to seeking amendment. *See Grochowski v. Phoenix Construction*, 318 F.3d 80 (2d Cir. 2003) (proposed amendment based on Appellate Division decision more than a year old); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) (proposed amendment premised upon movant's right to paid leave pursuant to a contract which was provided to movant at time of employment and which was further explained to movant at the time of his termination); *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F.Supp.2d 453 (S.D.N.Y. 2012) (false advertising statement was publicly accessible on defendant's website and contained in defendant's document production ten months earlier); *Williams v. Woodhull Med. and Mental Health Ctr.*, 10-cv-1429, 2012 U.S. Dist. LEXIS 21645 (E.D.N.Y. Jan. 31, 2012) (movant knew of the basis for its proposed additional factual allegations all along but waited until after discovery closed and summary judgment motions were due to propose the pleading amendment); *Simon v. City of New York*, 09-cv-1302, 2011 U.S. Dist. LEXIS 9515 (E.D.N.Y. Jan. 3, 2011) (movant knew of the basis for her proposed amendment and caused the further delay of her amendment by opposing the production of her

---

[2]     It should be noted that Defendants improperly attach counsel's September 17, 2014 email without redaction of privileged settlement communications. Nygard objects to the improper submission of settlement discussions, particularly as the submission is out of context and incomplete.

4

sealed criminal record containing the information on which the amendment is based); *Lamothe v. Town Of Oyster Bay*, 08-cv-2078, 2011 U.S.Dist. LEXIS 120843 (E.D.N.Y. Oct. 19, 2011) (plaintiff fails to explain when he became aware of the basis for the proposed amendment and why a motion for leave to amend was not sought sooner).

### B. Nygard's Diligence Enabled It To Timely Discover the March 17, 2012 Email.

Second, Nygard has demonstrated good cause for leave to amend because it was only able to find the document through its own diligence while reviewing hundreds of thousands of emails pulled pursuant to Defendants' proposed search terms for electronically stored information ("ESI"). *See* Fuchs Aff., Ex. I (requesting a search term frame from September 2011 to present). Prior to that, Defendants concede in their opposition papers that the parties commenced their meeting and conferring regarding ESI search protocols in December 2013, two months after this Court's October 1, 2013 deadline for amending without leave, and continued thereafter to engage in several meet and confers, along with extensive settlement discussions, but ultimately never came to a full agreement on appropriate search terms. Accordingly, Defendants cannot plausibly argue that Nygard "should have known" of the claim prior to the October 1, 2013 deadline, given that discovery parameters were never finalized.

Despite Defendants' intransigence, Nygard in good faith conducted a search and review of all emails responsive to Defendants' proposed search criteria, and during that time found the March 17, 2012 email buried amongst hundreds of thousands of other potentially responsive emails. Contrary to Defendants' assumption, that email, buried in the account of a departed employee and dated after she had left Nygard's employ could not be easily located, given that it took an exhaustive and extensive search to find it. *See, e.g.*, *Permatex, Inc. v. Loctite Corp.*, 03 Civ. 943 (LAK), 2004 U.S. Dist. LEXIS 10953 (S.D.N.Y. June 17, 2004) (granting leave to

5

amend where basis for amendment was not learned until the deposition of the former employee of defendant even though defendant's extensive searching of the employee's files could have revealed the taking of trade secret information); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D.193 (S.D.N.Y. 2014) (granting leave to amend where plaintiffs needed time to individually assess 500 individuals who opted into lawsuit before determining whether amendment was necessary); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp.2d 527, 536-37 (E.D.N.Y. 2010) (good cause shown where basis for amendment was not discovered until after the deadline for amending the complaint and discovery was delayed due to, *inter alia*, extensive settlement negotiations). Indeed, the hundreds of thousands of emails that were triggered by Defendants' proposed search terms rebut any notion that a simple search by Nygard would have easily uncovered this document.

In short, Nygard acted with diligence to review the thousands of emails of its employees that could be relevant to the instant action using Defendants' proposed search parameters. While Defendants do not say precisely when Nygard should have learned of Bolton's misconduct,[3] their attempt to charge Nygard with constructive knowledge of one lone email amongst hundreds of thousands of others -- literally a needle in a haystack -- is particularly disingenuous given that

---

[3] In further support of Defendants' argument that Nygard knew or should have known earlier of Bolton's breach of fidelity, Defendants submit a Declaration from defendant Fayles indicating that his supervisor, Bob Adamson, purportedly knew in 2011 that Bolton was starting a new business. As set forth in the accompanying sworn Declaration of Bob Adamson, this representation is categorically false. Adamson unequivocally states therein that he had no knowledge that Bolton was working for PECC or even a competing clothing business at any time prior to Bolton's resignation and did not learn of this fact until Nygard discovered the March 17, 2012 email in September 2014. *See* Adamson Decl. ¶¶ 2-5. Defendants also rely upon an email that Adamson sent to Denis Lapointe at the time Bolton resigned in which Adamson states that Bolton had been dissatisfied for some time and was looking for new employment. *See* Defendants' Opposition, at 11; Fuchs Decl., Ex. L. This email says nothing, however, to indicate that Adamson was aware that Bolton was working for PECC or any competitor while he was still employed with Nygard.

6

Defendants themselves claim that emails prior to Defendants' departure dates are irrelevant, while at the same time requesting that Nygard produce emails dating as far back as September 2011, nearly a year before Bolton's resignation.

Indeed, Defendants admit that they refused to produce any discovery relating to Bolton dating prior to his resignation from Nygard, and to Fayles prior to his termination, and it was not until after this motion was filed, that Defendants produced *any correspondence* at all.[4] Interestingly, the March 17, 2012 email was not produced by Defendants despite the fact it post-dates Fayles' termination from Nygard in December 2011, and therefore should have been produced even after applying Defendants' unilateral date restrictions, which suggests that Defendants are withholding far more relevant discovery. Had Defendants produced this clearly responsive email in a timely fashion, Nygard would have learned of the claim much sooner. Defendants, having hidden Bolton's pre-resignation misconduct for the past two years, should not now be permitted to reap the benefit of their willful concealment.

### C.  Amending The Complaint Will Not Prejudice Defendants.

Defendants' claims of prejudice are unavailing given that they concede discovery is still ongoing pursuant to an agreement between the parties. *See, e.g.*, Defendants' Opposition Brief, at 18, n.5. All of the facts necessary to bring the proposed breach of fiduciary duty claim were requested at the outset of discovery, have always been in Defendants' possession and continue to

---

[4]  In an effort to divert the Court's attention away from their discovery failures, Defendants make much ado about their offer to make available for inspection certain binders containing "style sheets". Such discovery represents only a small fraction of the information requested by Nygard and does not include any correspondence or emails that would go to the heart of Defendants' alleged misconduct. Defendants also argue that they produced over 1500 pages of documents, but this was not done until September 25, 2014 -- just five days before court regulated discovery was scheduled to expire and the day after Nygard filed this motion -- and by Defendants' admission, only after weeks of multiple requests and protests by Plaintiffs. In any event, Defendants admit that the production did not contain any of Bolton's emails dating prior to June 2012 (even if Fayles was copied on them) and is therefore clearly deficient.

be in their possession.  Furthermore, no depositions have yet taken place, and Defendants are purportedly still in the process of searching for responsive documents (despite having a year and a half to do so, and having only two individual custodians).  It is therefore difficult to imagine what additional resources, if any, Defendants contemplate spending in defense of the proposed new amendment.  Nor do Defendants contend that Plaintiff's document production is lacking in any way.  Indeed, despite Defendants' admitted refusal to produce any of Bolton's emails prior to his resignation, they requested, and Plaintiffs fully produced, documents responsive to all of Defendants' proposed ESI search protocols dating as far back as 2011, from nearly a dozen custodians.[5]

### D.  Defendants Concede That Nygard Has A Proper Cause of Action For Breach Of Fiduciary Duty And Duty Of Loyalty

Finally, Defendants do not dispute that the Proposed Amended Complaint properly states a claim for breach of fiduciary duty and duty of loyalty as matter of law, and that the statute of limitations to bring such a claim has not yet expired.[6]  Nor do Defendants dispute that Bolton was working with PECC and supplied with a PECC email address at least three months before he

---

[5] Defendants do not deny that Plaintiffs have fully produced all relevant non-privileged emails dating back to September 2011 from nearly a dozen email custodians, using Defendants' proposed search terms.  *See, e.g.* Fuchs Decl. 27, 30; Opening Brief 6.  Defendants further concede that they have withheld relevant discovery, that Nygard's multiple attempts to meet and confer were unsuccessful, and that Defendants did not produce any ESI until after this motion was filed (and after being pressed repeatedly by Nygard), and still have not completed their document production. *See, e.g.*, Defendants' Opposition Brief, at 5, 7, 19.  Defendants nevertheless devote a substantial part of their papers arguing their version of events in discovery, but other than their concessions, none of these other matters bear upon Nygard's right to amend.  Nygard of course disputes the distorted characterization of the discovery record in Defendants' opposition papers, but will not burden the Court with additional declarations in response thereto.

[6] In light of Defendants' position that the breach of fiduciary duty claim has nothing to do with Nygard's present claims, in the event this Court denies Nygard's motion for leave to amend, Nygard alternatively requests that denial be without prejudice to Nygard's right to commence a new cause of action against Bolton for breach of fiduciary duty and duty of loyalty based upon his conduct while he was still employed with Nygard as the statute of limitations has not yet expired.

8

resigned from Nygard. Instead, Defendants contend that the March 17, 2012 email suggests only that Bolton was taking steps to work with PECC and therefore he was not in breach. As confirmed by the very cases cited by Defendants, however, this purported defense, at best, raises a question of fact, not whether a claim has been sufficiently alleged in Plaintiff's pleading. *See, e.g.*, *Freiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928 (1977) (finding no claim for breach of fidelity after trial on the merits); *Mal Dunn Assoc. v. Kranjac*, 145 A.D.2d 472 (2d Dep't 1998) (granting summary judgment dismissal of employer's breach of fiduciary duty claim).

In any event, as established in Nygard's opening brief, and confirmed in the Adamson Declaration, Bolton did not have Nygard's permission to work for PECC while he was still employed with Nygard and was therefore a violation of both his contractual and common law obligations to Nygard. The March 17, 2012 email further shows that Bolton was covertly collaborating with other former Nygard employees (all of whom became employed with PECC after leaving Nygard) to develop and market clothing samples to solicit SteinMart, a clothing retailer, on behalf of PECC. SteinMart is a potential customer of Nygard and one that Nygard had attempted to do business with several times in the past. *See* Adamson Decl. ¶ 4. The email clear sets forth a cause of action.

II. **DEFENDANTS SHOULD BE COMPELLED TO PRODUCE RELEVANT, NON-PRIVILEGED DOCUMENTS FROM THEIR PECC EMAIL ACCOUNTS AND PERSONAL EMAIL ACCOUNTS.**

In its opening papers, Nygard established a right to discovery and inspection of all responsive non-privileged emails sent to and from Defendants' PECC email accounts, and any relevant non-privileged emails from their personal email accounts regardless of date. *See, e.g.*, Opening Brief, at 6-8. The present Complaint alleges that Bolton engaged in various acts of misconduct on behalf of PECC, including, violating his employment agreement, engaging in unfair competition, misusing Nygard's confidential information, passing off samples of Nygard

9

clothing as PECC's, and soliciting at least one of Nygard's employees to join PECC. Because Nygard did not know (and still does not know) the full extent of Defendants' misconduct or when they in fact began to work on PECC's behalf, Nygard appropriately requested that Bolton and Fayles produce all communications with PECC and other relevant witnesses (such as Christina MacDonald, Mike Fayles, and Gurusankar Gurumoorthy) both before and after his resignation. *See, e.g.*, Fuchs Decl., Ex. F, G.

In its opposition papers, Defendants concede that Bolton did in fact begin working with PECC months before he resigned from Nygard, and that it is in possession of these communications. Defendants further concede that despite multiple unsuccessful meet and confers and Plaintiffs' broad entitlement to discovery, that they have unilaterally imposed a date restriction by refusing to produce any documents pre-dating Bolton's resignation in June 2012, and Fayles' termination in December 2011, despite the clear relevance of any documents between Defendants and PECC and other relevant witnesses regardless of date. *See, e.g.*, Defendants' Opposition Brief, at 6. Finally, Defendants admit that they did not produce any communications of any of the Defendants until after this motion was filed, and only after Nygard had been repeatedly pressing Defendants over several weeks for their production. *See, e.g.*, *id.* at 7, 19.

Defendants nevertheless contend that production of any pre-resignation documents is premature, and therefore overbroad, because they would only go to Plaintiffs' proposed new claim, which has not yet been permitted by this Court. *See, e.g.*, *id.* at 16. In this regard, Defendants also contend that their refusal to produce documents of either Defendant before their respective departures from Nygard is somehow justified because Nygard's complaint, by Defendants' strained interpretation, alleges conduct that occurred only after their resignation.

10

Finally, Defendants contend that there is no basis to produce any of defendant Fayles's pre-termination documents because no claim of breach of fidelity has similarly been alleged against him.[7]

None of Defendants' arguments provide a valid basis to withhold responsive discovery that is clearly relevant to Nygard's existing claims of unfair competition, misuse of confidential information, and breach of employment agreement. First, Nygard is entitled to explore in discovery, among other facts relevant to its existing claims, when Bolton and Fayles began working with PECC, what were the circumstances of their hiring and recruitment by PECC, when they began to engage Nygard's merchandisers on behalf of PECC, and when they began to solicit Nygard's customers. All of this would be contained in emails and correspondence, not on any "style sheets." Nygard therefore is entitled to discovery and inspection of all relevant non-privileged correspondence sent to and from their PECC and personal email accounts that relate to these and other issues relevant to the allegations of the Complaint, regardless of date. *See, e.g.,* Fed. R. Civ. P. 26(b); *Condit v. Dunne*, 225 F.R.D. 100, 105-06 (S.D.N.Y. 2004) ("Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept.").

---

[7] Defendants also oddly contend at great length that Nygard inappropriately seeks unfettered inspection of all non-privileged and personal emails of Defendants even though no such claim or demand was ever made. *See, e.g.* Defendants' Opposition Brief, at 1. Nygard's opening papers clearly limit its requests to only "relevant" and "non-privileged" emails that Defendants Bolton and Fayles exchanged from their PECC and personal email accounts -- not emails involving family members or privileged communications. Defendants also argue that Nygard did not meet and confer prior to bringing this motion. As Court regulated discovery was set to expire in less than a week, and by Defendants' admission, they have repeatedly stonewalled Plaintiffs' efforts to obtain discovery despite several unsuccessful meet and confers (and had not yet produced any email communications at the time this motion was filed despite promising their imminent production for several weeks), Defendants have not offered any indication that yet another meet and confer on the eve of the discovery deadline would have been particularly fruitful.

11

Second, Nygard's proposed new amendment adds nothing new to the scope of discovery previously sought by Nygard. The fact that pre-resignation documents also relate to Nygard's proposed new claim does not render them any less relevant to Nygard's existing claims, which covers conduct that occurred both before and after Defendants left Nygard's employ. Third, that Nygard has not asserted a breach of fidelity claim against Fayles similarly does not provide a basis to withhold any of his relevant pre-termination documents.

Finally, although Defendants have objected to production of emails involving Bolton dated prior to his resignation in June 2012, Defendants have not objected to producing any communications between Fayles and PECC post-dating his termination in December 2011. Strangely, however, the March 17, 2012 email, in which Fayles is communicating directly with PECC, Bolton, MacDonald, Gurumoorthy, and a Nygard merchandiser, among others, did not appear in Fayles's production, demonstrating that Defendants are clearly withholding responsive documents without basis. Given that Defendants waited until the last week of court-regulated discovery to produce what has clearly amounted to a deficient document production, Nygard is entitled to an order compelling discovery.

## **CONCLUSION**

For all of the foregoing reasons, the Court should (1) grant Nygard's motion for leave to file the Proposed Amended Complaint, which includes a new claim for breach of fiduciary duty; (2) order that Defendants permit discovery and inspection of all relevant non-privileged emails sent to and from their PECC email accounts, and any relevant non-privileged emails from their personal email accounts; (3) order that PECC produce documents responsive to the Subpoena for documents served on December 19, 2013, and Subpoena for Deposition on June 13, 2014; and (4) grant Nygard such other and further relief as this Court deems just and proper.

Dated: New York, New York
       October 15, 2014

Respectfully submitted,

Seyfarth Shaw LLP

By:   s/ James S. Yu
    James S. Yu
    620 Eighth Avenue
    New York, NY 10018-1405
    (212) 218-5500
    Email: jyu@seyfarth.com

*Attorneys for Defendant*
*Nygard International Partnership and*
*Nygard Inc.*